Roy C. Fleeman v. Commissioner.
Fleeman v. Commissioner
Docket No. 16268.
United States Tax Court
1948 Tax Ct. Memo LEXIS 66; 7 T.C.M. (CCH) 770; T.C.M. (RIA) 48126; October 20, 1948
*66 On the record, held, in the taxable year 1943 petitioner and his wife conducted an insurance business under the name of R.C. Fleeman Agency as a "bona fide" partnership for income tax purposes, and respondent erred in taxing the entire net income therefrom to petitioner as sole proprietor. R. B. Cole, Esq., First National Bank Bldg., Miami, Fla., and Thomas McE. Johnston, Esq., for the petitioner. Edward L. Potter, Esq., for the respondent. LEECH Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves a deficiency in income tax for the calendar year 1943 in the amount of $5,012.50. The sole contested issue is whether the respondent erred in taxing the entire net income from an insurance business, operated in the name of R. C. Fleeman Agency, for the year 1943 to petitioner. The case was submitted upon oral testimony and exhibits. Findings of Fact Petitioner is an individual residing in Dade County, Florida. His return for the period involved was filed with the collector of internal revenue for the district of Florida at Jacksonville, Florida. Petitioner is the husband of Golda Grace Fleeman. In January 1926, petitioner established *67 an insurance agency at Miami, Florida. No capital was invested at the beginning, petitioner occupying space in a real estate office. Mrs. Fleeman is a registered nurse and worked at her profession from 1922 to 1926. In June 1926, Mrs. Fleeman entered the office of petitioner and has worked continuously in the insurance business since that time. During the period 1926 to 1930, petitioner and his wife operated the business without employees. In 1930 one employee was hired. In 1934 the business expanded from the lower east coast of Florida to include the entire state. Offices were then established in Tampa, Jacksonville, Pensacola and Orlando. Miami remained the home office. In 1934, by reason of taking over the state-wide insurance agency, the number of employees increased to 12 or 14, and the number of agents increased to 70 or 80. By 1942 the annual gross premiums of the insurance agency reached approximately $650,000. Petitioner specialized in the sales end of the business. Petitioner's wife worked in every phase of the business. She operated the office, hired and discharged employees, trained the employees in all aspects of the pusiness and fixed their salaries. She also bought equipment *68 and supplies, serviced policyholders, investigated claims, audited and rejected claims, prepared claim reports and drew drafts in payment of such claims. In the absence of petitioner, Mrs. Fleeman decided questions of policy, sold insurance policies, and collected premiums. She accompanied petitioner on trips to the home offices of the companies represented by the agency, where she discussed matters affecting her end of the business with the department heads of those companies. Except for a period of four months in 1936, when she was away from the business for the birth of a child, she devoted her full time to the business every day and often worked into the night. For a period of four years after the birth of her child she employed a nurse and always thereafter employed a housekeeper. Mrs. Fleeman from 1926 had, and exercised, authority to sign checks on the agency account. Prior to January 1, 1943, Mrs. Fleeman drew no salary or other compensation from the insurance business. In the latter part of 1942, petitioner and his wife engaged counsel to draft a formal partnership agreement. They were advised that under the Florida statutes a married woman could not enter into a partnership *69 until authorized to deal as a feme sole. Thereupon Mrs. Fleeman initiated a proceeding to remove such disability. Under date of December 29, petitioner and his wife executed a memorandum to enter into a formal partnership agreement as of January 1, 1943. On February 3, 1943, Mrs. Fleeman was duly authorized to deal as a feme sole. On March 15, 1943, a formal partnership agreement was executed, which provided as follows: "THIS AGREEMENT, made this 15th day of March, 1943, between GOLDA GRACE FLEEMAN, a free dealer, and R. C. FLEEMAN, both of the City of Miami, County of Dade, State of Florida, WITNESSETH: "That WHEREAS, the said R. C. Fleeman for many years past has been operating an insurance agency in the State of Florida, with its principal office in the City of Miami, Dade County, and has been representing, as a State Agent, Mutual Benefit Health and Accident Association, Omaha, Nebraska, and United Benefit Life Insurance Company, Omaha, Nebraska, and Golda Grace Fleeman, who is the wife of R. C. Fleeman, has been working with and assisting him in carrying on the said insurance agency; that in operating this agency throughout the State of Florida, it is necessary for R. C. Fleeman *70 to do a great deal of travering over the State and Golda Grace Fleeman has, for many years past, been the Office Manager in Miami for this insurance agency. She has had entire and absolute control of the personnel. She has employed all the employees, directed and supervised their work and discharged such employees as have been discharged, and as such Office Manager, she has lent great assistance to the said business; and "WHEREAS, being the wife of the said R. C. Fleeman, she could not become a partner in the said business without the removal of her disabilities, therefore, it being desirable that she and the said R. C. Fleeman operate the said insurance business as a partnership, she did take steps on the 26th day of December, 1942, to become a free dealer by publishing notice on that date in the Miami Review, a newspaper of general circulation published in Dade County, Florida, of her intention to appear on the 27th day of January, 1943, before one of the Judges of the Circuit Court of the Eleventh Judicial Circuit, in and for Dade County, to apply for a license to manage, take charge of and control her property, and on the 27th day of January, 1943, pursuant to said notice, which *71 was published in accordance with the Statutes of Florida, she appeared before the Honorable Paul D. Barns, one of the Judges of said Circuit Court, and filed a petition for a license to take charge of and manage her estate and property and become a free dealer, and thereupon, on the same day, the said Judge did enter an order referring her application to John G. Thompson, Esquire, an attorney practicing before said court, as Special Master to take testimony and report the same to the Court, and that such testimony was taken before said Special Master who reported the same to the Court, with his findings, and upon that report and findings a final decree was entered by the said Court on February 3, 1943, a copy of which is attached hereto, marked Exhibit 1, by which license was granted to the said Golda Grace Fleeman to take charge of and manage her own estate and property and to become a free dealer in every respect. A copy of said final decree was then published in the said Miami Review, pursuant to the requirements of the Statutes of Florida, for a period of four weeks, and thereby she did become and now is a free dealer with all the rights to enter into this contract that she would *72 have had she never been married; and "WHEREAS, after the filing of said notice to become a free dealer and with the purpose of facilitating the formation of the partnership with her said husband, as such free dealer, she and her said husband entered into a contract on the 29th day of December, 1942, a copy of which is hereto attached, marked Exhibit 2, and by reference made a part hereof, whereby it was understood that for all intents and purposes, the said parties were entering into a partnership to engage in the said insurance business under the name of R. C. FLEEMAN AGENCY, with R. C. Fleeman sharing 60% of the profits and losses thereof and Golda Grace Fleeman sharing 40% of the profits and losses thereof, and providing for the entering into by the said parties of a binding contract of partnership between them as soon as the disabilities of Golda Grace Fleeman could be removed, but arranging for the setting up of the business on a partnership basis immediately; and "WHEREAS, the said business was set up as a partnership on the 1st day of January, 1943, and has been so conducted since that time, and the parties are desirous of confirming in every way their memorandum of agreement *73 for the entering into of a partnership dated december 29, 1942; "NOW, THEREFORE, in consideration of the premises hereof, the undersigned parties do hereby confirm and approve all of the acts, agreements and understandings between them relative to said partnership heretofore transpiring and do hereby become and are partners in the business for the purpose and upon the terms herein stated. "IT IS UNDERSTOOD AND AGREED THAT: "1. The firm name of the partnership shall be R. C. FLEEMAN AGENCY. "2. The business to be carried on by the partners is that of conducting an insurance agency, representing in the State of Florida the said Mutual Benefit Health and Accident Association, Omaha, Nebraska, and the said United Benefit Life Insurance Company, Omaha, Nebraska, and such other insurance companies as the said partners may from time to time contract to represent. "3. That the principal place of business of the said partnership shall be Miami, Florida, and that R. C. Fleeman shall continue to be the General Manager and shall have full control and management of the said business throughout the State of Florida and shall continue to travel from place to place in the handling of said *74 business, as he has heretofore done, and Golda Grace Fleeman shall be Office Manager in charge of the Miami office of said business and shall continue to employ, manage, direct, control and discharge, when necessary, any and all employees employed by the said business in Miami, Florida; that she shall not only be Office Manager, but, in the absence of her husband, she shall have general control of the said business at any time the said R. C. Fleeman is out of touch with the said office. "4. That the business in which the partnership is engaged does not require a great deal of capital investment because it is largely a collection business and, in view of the fact that this partnership was entered into, in so far as it was possible for husband and wife to contract with each other, on the 29th day of December, 1942, it is understood and agreed that the capital of the partnership business will be reflected by a statement of the business of R. C. Fleeman as of January 1, 1943, when the actual partnership operation began and the business for all intents and purposes was transferred to the firm of R. C. Fleeman Agency, a copy of which financial statement is hereto attached, marked Exhibit *75 3, and by reference made a part hereof. That the said statement shows a deficit of $1,537.22 to be due by R. C. Fleeman on January 1, 1943, to the said firm and that this sum has been repaid by the said R. C. Fleeman to R. C. Fleeman Agency, and the said R. C. Fleeman has heretofore sold, assigned, transferred, set over and delivered to R. C. Fleeman Agency all of the furniture and fixtures heretofore owned by him and used in the offices occupied by him at 511 Security Building, Miami, Florida, in connection with the said insurance business, and has also sold, assigned and delivered to R. C. Fleeman Agency that certain Chrysler Automobile, Model 1941, No. C 30-19823, which has also been used in the said insurance business by him, and it is also understood and agreed that in consideration of the services heretofore rendered and the services hereafter to be performed for the said partnership by the said Golda Grace Fleeman, as hereinabove set forth (she having acted as Office Manager of said business since 1927 and agreeing to continue to act as Office Manager), she shall have from now on, 40% of the assets, together with the profits of said business, and R. C. Fleeman shall have 60% *76 of the assets and profits of said business, and in case of any loss, the said loss shall be borne in similar proportions, that is, R. C. Fleeman shall bear 60% of any such loss and Golda Grace Fleeman shall bear 40% thereof, and the net profits of said business shall be divided 60% to R. C. Fleeman and 40% to Golda Grace Fleeman from time to time, as mutually agreed upon, it being understood, however, that at all times a sufficient amount of capital shall remain in said business to take care of all overhead expenses thereof. "5. A strict accounting of the said business shall be maintained monthly with the preparation of a balance sheet by a competent accountant, showing the financial condition of the business as of the last day of each calendar month throughout each and every year, a copy of which sheet shall be furnished by the said accountant to each member of the partnership, and a final accounting for each calendar year shall be made as of December 31, showing the financial condition, with profits and losses, of the said business for said calendar year, and a copy of said accounting statement shall be furnished by the said accountant to each of the said partners. "6. This partnership *77 is not organized for any definite term but it shall operate until the same shall be dissolved by mutual agreement of the parties or by operation of law upon the death of one of the partners. "IN WITNESS WHEREOF the parties hereto have hereunto set their hands and seals on the day and year first above appearing." After the partnership was formed, Mrs. Fleeman performed the same duties and rendered similar services as she had theretofore. Mrs. Fleeman had no separate bank account. The firm maintained a partnership account. Petitioner and his wife also had a joint account, and petitioner maintained an individual account on which Mrs. Fleeman was authorized to draw. After the partnership agreement was executed in 1943, Mrs. Fleeman withdrew funds for her personal use; some she invested in government bonds payable to herself; some bonds were purchased in the name of her son, and some withdrawals were invested in stocks, mortgages and other investments which were taken in the joint names of herself and the petitioner. In 1943, the R. C. Fleeman Agency filed a partnership return, on which 60 per cent of the net income was allocated to petitioner and 40 per cent to Mrs. Fleeman. In determining *78 the deficiency against petitioner for the taxable year 1943, the respondent included all the net income of the R. C. Fleeman Agency for that year except the amount of $3,600 allowed as salary to Mrs. Fleeman. Other adjustments made by the respondent are not contested. Opinion The sole issue presented is whether the respondent properly included in petitioner's gross income for the taxable year 1943, the entire net income of an insurance business carried on under the name R. C. Fleeman Agency. The petitioner contends that the business was conducted under a partnership consisting of himself and his wife and that it should be so recognized for income tax purposes. The issue is factual and is to be resolved in the light of established principles as applied to its own particular facts. Petitioner has the burden of showing error in the respondent's determination. This record leaves no doubt in our minds that petitioner has established the existence of a bona fide partnership for Federal income taxes in the taxable year. The evidence adduced and the character and credibility of the witnesses, a number of whom were disinterested, impress us favorably. We think it unnecessary to repeat in *79 any detail the facts set forth in our findings of fact. They establish satisfactorily that the insurance business here in question was the product of the joint efforts of petitioner and his wife, and that it progressed successfully only because of the combined efforts, industry and skill which they both applied to it. The income of the business was produced principally through personal services. Only nominal capital was required. From 1926 to and including the taxable year, Mrs. Fleeman devoted her full days and many additional hours to the conduct of the business. The evidence shows her to be a competent insurance business woman. She was able to and did perform in every phase of the business. Perhaps her services were not the equivalent of all those rendered by petitioner, but they constituted an integral and essential part of the operation of such business. To say Mrs. Fleeman's services were not vital is to ignore the nature of the business and the varied character of the services she rendered. In fact, her services were not appraised as having equal value, since under the partnership agreement only 40 per cent of the net income was allotted to her. The fact that no salary or compensation *80 was paid to her until the partnership agreement was executed in 1943 is unimportant. The record shows that the reason Mrs. Fleeman was not treated as a partner of the business prior to 1943 was the fact that under the laws of the State of Florida she could not enter into a binding partnership until authorized to deal as a feme sole. In 1942, Mrs. Fleeman applied to the court, and was authorized to so deal on February 3, 1943. Thereupon petitioner and his wife executed a formal agreement of partnership, effective as of January 1, 1943. Although the formal agreement of partnership was not executed until March 15, 1943, this delay was due to the fact that the parties desired to comply with the Florida laws. The existence of a bona fide partnership for income tax purposes is not controlled by state law. . The record shows that petitioner and his wife intended to and in fact did operate from January 1, 1943, as a bona fide partnership for Federal income tax purposes. A partnership return for the taxable year 1943 was duly filed, on which the net income from such partnership was allocated on a 40-60 basis as provided in said agreement. *81 We have, therefore, found as a fact that petitioner has established the existence of a bona fide partnership, for Federal income tax purposes, composed of himself and Mrs. Fleeman, under which the insurance business under the name R. C. Fleeman Agency was conducted in the taxable year, and the respondent erred in taxing the entire net income therefrom to petitioner. Decision will be entered under Rule 50.